1

2

3

4

5

6

7

FILED & ENTERED

NOV 13 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

8

9

10

11

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Avram Moshe Perry<br><br><br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:  1:09-bk-11476-GM<br>Adv No:   1:10-ap-01043-GM<br><br>**MEMORANDUM OF DECISION GRANTING MOTION FOR SUMMARY JUDGMENT AS TO CHASE AUTO FINANCE (Dkt. 293)**<br><br>Date:  October 20. 2015<br>Time:   10:00 a.m.<br>Courtroom:  303 |
| Avram Moshe Perry<br><br>Plaintiff(s),<br><br>v.<br><br>Chase Auto Finance,  Does 1-100, JPMorgan Chase Bank, N.A.,  Key Auto Recovery<br><br><br><br>Defendant(s). | |

Chase brings this motion for summary judgment.  The sole remaining cause of action is for failure to turn over the vehicle that was repossessed prepetition, both under 11 U.S.C. §542(a) and §362. The motion was heard on October 20, 2015. In

preparation for the hearing, the Court created a chronology and sent it out to the parties

for their comments. At the hearing the Court went over the comments and created an

agreed-to version of the chronology, which, with some later refinements by the Court, is

attached below. It then determined that it would rule on the papers and continued this to

December 8, 2015 as a holding date.

The chronology gives a general picture of the events upon which this complaint is

based and also points out some disputed facts. It also creates an evidentiary base for

determining this motion.

## THE FACTS

The Court finds that the facts set forth below in normal typeface are no longer in

dispute, while facts in dispute and/or without evidentiary support are in italics:[1]

1. On or before 2002, Plaintiff Avram Moshe Perry ("Perry") leased a 2002

   Nissan Pathfinder, VIN No. JN8DR09X41W562980 ("Vehicle") to which

   Chase Manhattan Auto Finance Corp. ("Chase Auto") was the lessor and

   title owner.

2. During 2002 and 2003 there were already some problems with the payments

   under this lease: Chase Auto apparently initially misapplied at least one of

   them and maybe more.

3. On or about August 7, 2004, Perry bought out the vehicle lease by

   financing the purchase through Chase Manhattan Bank USA, N.A., which

   would subsequently become JP Morgan Chase Bank, N.A., a defendant

   herein ("Chase"). Perry executed and delivered to Chase a written

---

[1] The documents relevant to these facts are cited and more specifically identified in the attached
chronology.

Promissory Note and Security Agreement ("Contract"). The Contract

provides that Perry would pay to Chase the principal sum of $19,446.10 at

an initial interest rate of 6.50%, commencing on or about September 21,

2004, and continuing until August 21, 2009 when the Contract was

scheduled to mature.

4.   In the Contract, a paragraph entitled "Security Interest" provides that

Perry is "granting [Chase] a security interest in the vehicle being purchased,"

the vehicle being the 2001 Nissan Pathfinder.

5.   In the Contract, a paragraph entitled "Default" provides that Perry is in

default under the Contract, among other things, if he fails "to pay any

payment within 10 days of its due date." This paragraph provides as one of

the remedies available to Chase upon Perry's default that Chase can "take

immediate possession of the vehicle (repossess the vehicle) with or without

legal process." A paragraph entitled "Sale of Repossessed Vehicle" also

provides that after Chase takes possession of the Vehicle, Chase may sell

the Vehicle and "[i]f [Perry] owe[s] more than the net proceeds of sale, to the

extent allowed by law [Perry] will pay [Chase] the difference between the

net proceeds of sale and what [Perry] owe[s] when [Chase] ask[s] for it."

(Since Perry has received a discharge, it is not relevant to this case whether

there was a deficiency.)

6.   On August 18 and 19, 2004, Chase Auto signed the certificate of title for the

Vehicle, both to transfer registered ownership of the Vehicle to Perry and to

release its lien on the Vehicle, reflecting the fact that the lease had been paid

off and Perry thus became the legal owner. *Perry filed copies of this*

*certificate with the Court, but the location of the original is not clear. There is*

*no evidence that Chase deposited the certificate of title - endorsed to show its*

*security interest in the Vehicle - with the Department of Motor Vehicles, as*

*required by Cal. Vehicle Code §6300 et seq. to perfect Chase's lien on the car.*

7.  Chase Auto also executed California DMV Form 227 with respect to the Vehicle

in order to (i) transfer registered ownership to Perry and release Chase Auto's

lien and (ii) have either duplicate paper title or paperless title issued. (*It is not*

*clear which type of title, as the appropriate box was not checked.*) Chase Auto

certified that the certificate of title for the Vehicle had been lost. This Form 227

was dated August 19, 2004, although it was notarized on February 22, 2005.  (*It*

*is not clear whether Chase's new lien was noted on this form, as the back of the*

*form where it would have been indicated was not submitted to the Court.*)

8.  *Chase has submitted a copy of a DMV record indicating that electronic title for*

*the Vehicle - with Perry as the registered owner and Chase as the lienholder –*

*was issued on March 7, 2005. (This record has not been authenticated, but it*

*suggests that the paper title was lost and that the DMV Form 227 described*

*above was executed February 2005 in order to have paperless title issued.)*

9.  Between 2004 and 2008, there were various issues under the Contract

concerning payments made or alleged by Perry to have been made. It is

clear that Chase had some incorrect bookkeeping.  *It is disputed as to*

*whether Perry made all of his payments in a timely fashion.*

10. Chase's records indicate that on or about May 16, 2008, Chase sent Perry

a document entitled "Account Rewrite Agreement" memorializing an oral

agreement whereby Perry and Chase agreed that the monthly payment

amount would be reduced to $252.08 starting June 10, 2008. Perry asserts that he never signed the Account Rewrite Agreement and, in fact, that *he kept demanding that one be sent but that it never was.* However, he subsequently made several monthly payments of $252.08.

11.  Chase's payment history shows Perry making five payments of $252.08 during the eight month period from June 10, 2008 to February 10, 2009. Perry made $252.08 payments in December 2008 and January 2009, but Chase's payment history reflects that those payments were applied to payments due for September and October 2008. Thus, under Chase's records, this left payments due for November and December 2008 and January 2009.

12. On January 30, 2009, Chase decided to repossess the car and contracted with Key Auto Recovery ("Key") to have Key recover the car for the benefit of Chase. The repossession order states that as of January 30, 2009 the balance on the account was $8,819.37 and the past due amount was $756.24.

13. On February 6. 2009, Key repossessed the car from Perry's apartment building.

14. On February 10, 2009, Chase requested paper title for the Vehicle, thus closing the Vehicle's electronic title on file with the DMV.

15. On February 11, 2009, Perry filed his chapter 7 bankruptcy case (1:09-bk-11476-GM; the "Bankruptcy Case").  Perry did not claim the car as exempt in Schedule C, but he did file a statement of intent (Official Bankruptcy Form 8) with the

petition and schedules. In this statement of intent, he indicated his intent to redeem the Vehicle and stated that the Vehicle "is claimed as exempt."

16. *That same day, prior to the notice of bankruptcy, Chase's records indicate that it sent Perry a notice of intent to dispose of the repossessed vehicle. Perry asserts that he never received this.*

17. Chase was listed as a creditor in the filing matrix and was given notice of the bankruptcy through the Bankruptcy Noticing Center. Perry also sent a notice of bankruptcy directly to Chase on February 12, 2009. No later than February 13, 2009, Chase was aware of the bankruptcy.

18. On February 12, 2009, Perry sent a letter to Key Auto Recovery detailing the repossession and threatening criminal penalties.

19. On February 13, Chase placed a "bankruptcy hold" on Perry's account *and appears to have downloaded a summary of the Vehicle's electronic title account from the DMV, which showed that Chase was the lienholder and that the electronic title account had closed February 10, 2009 due to a request for a paper title.*

20. A few days later, Perry filed a complaint against Chase in the Los Angeles Superior Court.

21. On February 23, Chase noted Perry's chapter 7 in its internal, written notes. Chase's notes for February 24 and 25, show that Chase was still attempting to route a copy of title and the Contract to the appropriate department at the bank.

22. On February 25, 2009, Perry filed "Plaintiff [sic] Opposition to Chase Bank Motion to Lift Stay, Request from the United States District Court for a

Preliminary and/or Permanent Injunction and/or Injunctive Relief under 28 U.S.C. §2283, Money Damages." [BK dkt. 14.] Although apparently directed to the District Court, this document was filed in the Bankruptcy Court.  No motion to lift stay had yet been filed and none is discussed in the body of this document. Perry was seeking return of the car, an injunction to cease further action against him, and damages.  At an April 9 hearing, the Court denied the injunction, etc.

23. On March 9, 2009 Perry filed a motion to show cause, for shortened time, and for sanctions against Chase and Key for violation of the automatic stay, which Chase opposed. [BK dkt. 17, 18.] That motion was denied by the Court at the April 9 hearing.

24. On March 10, 2009, Chase filed a motion for relief from the automatic stay. [BK dkt. 15.] This was served on Perry by mail on March 10. Chase was still in possession of the car *either directly or through Key*.

25. Chase set the hearing on its motion for relief from stay for April 9, 2009.

26. Between March 10 and April 9, Judge Mund had self-calendaring hearing dates for motions for relief from stay available on March 12, 19, 26 and April 2, 2009.

27. On April 9, 2009, this Court granted Chase's motion for relief from stay, entering its order on April 23. [BK dkt. 22, 29.]

28. On April 14, 2009, Perry filed an appeal and sought a stay pending appeal of enforcement of the order granting relief from stay, which was denied. [BK dkt. 25, 26, 28.]

29. On April 30, 2009, Chase sold the car.

30. The BAP dismissed Perry's appeal as moot and affirmed the bankruptcy court's

order to abstain from hearing Perry's state law action for wrongful repossession.

[BAP case 09-1135, dkt. 28]  This was affirmed by the Ninth Circuit. [09-60052,

dkt. 25-1.]


## MOVING AND RESPONDING PAPERS

**The Motion**

Perry did not file this adversary proceeding until February 2010, some ten

months after the car was sold. Therefore, the equitable doctrine of laches should bar his

claim for violation of §542. Further because the value to the bankruptcy estate is little or

nothing, §542 is not applicable. Perry scheduled the value of the car at $9,000 and the

amount of the Chase claim at $9,000. Therefore the trustee really could not use, sell, or

lease this car.

Chase then argues that it moved expeditiously for relief from stay, filing its motion

just 27 days after the bankruptcy was filed. It had rights in the vehicle that were superior

to those of Perry, who only had the right to redeem the car. *In re Fitch*, 217 B.R. 286

(Bankr. S.D. CA 1998). Perry never tendered the funds to redeem and there is no

showing that he was capable of doing so.

*Fitch* also held that the creditor could retain possession of the car pending the

outcome of the motion for relief from stay. A creditor's refusal to immediately turn over

the vehicle to the debtor is not a violation of the stay and thus not a violation of §542.

Chase acted expeditiously to file its motion for relief from stay. Further, Chase

was maintaining and continuing perfection of its possessory lien rights under the

contract that it had with Perry and this cannot be a violation of the stay under

§362(b)(3).

**The Opposition**

On September 29 Perry filed his opposition, composed of four documents: an opposition to the motion (which is also in the form of a declaration), a request for judicial notice, a proposed statement of uncontroverted facts and conclusions of law, and a memorandum in support of a motion to strike the declaration of Attorney Jeff Allsop because it is not on personal knowledge and thus it is not admissible.

As a matter of law, the non-moving party need not put forth any evidence until the moving party has shown by admissible evidence that it would be entitled to judgment in its favor. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). The opposing party can use hearsay evidence if the out-of-court declarant could later present the evidence in a form that would be admissible at trial. *J.F. Feeser, Inc, v. Serv-A-Portion, Inc*., 909 F.2d 1524, 1542 (3d Cir. 1990).

As to the timing of the redemption issue, the defendants did not serve Perry with any such redemption papers until he obtained them through the State Court discovery process.

As to when the adversary proceeding was filed, an adversary proceeding is not necessary for the Debtor to obtain damages for a stay violation. It can also be by motion as a contested matter under Fed. R. Bankr. P. 9014.

The relief from stay motion was based on a bogus "Title Custody," "Electronic Title Request." Under the terms of the promissory note, the "rewrite agreement" was not effective because it was not signed by both parties. Thus, it is appropriate to reconsider the correctness and merits of the original order for relief from stay under Fed. R. Bankr.

P. 9023.

The only way that Chase could perfect its lien was through possession because the "rewrite agreement" did not become effective. Thus, Chase was required to return the car - although it could request adequate protection. But if the Debtor does not agree to the adequate protection, the burden is on the creditor to request a hearing, though the burden is on the Debtor to prove that the creditor's rights will be adequately protected. To avoid turnover of the car due to lack of adequate protection, the creditor can request an emergency hearing under §362(f). *Expeditors Int'l of Wash. v. Colortran (In re Colortran)*, 210 B.R. 823, 827-28 (9th Cir. BAP 1997), *aff'd in part and vacated in part on other grounds*, 165 F.3d 35 (9th Cir. 1999).

Chase and Key had an affirmative duty to terminate possession of the vehicle when they learned of the bankruptcy case. Since this was exempt property, turnover to the Debtor was appropriate. *Mwangi v. Wells Fargo Bank (In re Mwangi)*, 432 B.R. 812, 823 (B.A.P. 9th Cir. 2010). Perry had continuing rights in the car.

Perry's exemption rights were automatic and he did not have to make a claim. It was the duty of the possessor to return the property - not of the Debtor to pursue its return. *California Empl. Dev . Dep't v. Taxel (In re Del Mission)*, 98 F.3d 1147, 1151 (9th Cir. 1996). Even if the creditor did not intend to violate the stay, once it knows of the stay, it bears the risk of all intentional acts that do violate the stay. *Assoc. Credit Servs. v. Campion (In re Campion)*, 294 B.R. 313, 318 (B.A.P. 9th Cir. 2003). If it is a willful violation, the Debtor is entitled to recover actual and punitive damages as sanctions under §362(k). Even if the defendant believes in good faith that it had a right to the property, this is not relevant to whether the act was willful. *Johnston Envtl Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 6018 (9th Cir. 1993).

Even though the defendants no longer have the property, §542 requires them to turn over the value of the property.

Perry then goes on to make a technical argument about whether the answers to the amended complaint were late and thus he would be entitled to judgment against the defendants. This also deals with whether the defendants are allowed to seek discovery. [*Note by the Court: I am not aware of any discovery pending at this time and thus there is no issue here to be dealt with. As to striking the answers, I do not believe that Mr. Perry's argument is well taken.*]

All reasonable inferences must be construed in the light most favorable to the plaintiff. Mere conclusions and unsupported factual allegations are insufficient to support a summary judgment motion.

Chase has submitted a bogus title to the 2001 Nissan Pathfinder. Paper title was given by Chase to Perry. Chase violated TILA on April 2009 by failing to provide him with notice of the sale, transfer or assignment because they had surrendered title to him in August 2004 and thus they had no lien. In support of the motion for relief from stay [BK dkt. #15], they show a request for paper title and assert that electronic title was sufficient. However, Chase had assigned Perry title before 15 U.S.C. §1641(g) was enacted and thus an obligation existed for Chase to provide notice of title change to Perry and not just seek an Electronic Title.

**The Reply**

This is not a reconsideration of the relief from stay motion and order. The value of the car to the bankruptcy estate is inconsequential and Perry does not address §542(a) as to this. Perry valued the car at $9,000 and Chase states that he owed

$8,100 on it.

As noted in *Fitch*, Chase had rights that were superior to Perry's right to possession and thus it was correct that Chase could keep the car pending the motion for relief from stay. Beyond that, Chase's possession of the car pending a ruling on the motion for relief from stay "constituted a maintaining and continuing perfection of CHASE's possessory lien rights under the contact" and that cannot be a violation of the automatic stay. 11 U.S.C. §362(b)(3); *Hayden v. Wells (in re Hayden)*, 308 B.R. 428 (B.A.P. 9th Cir. 2004); *Boggan v. Hoff Ford (In re Boggan),* 251 B.R. 95 (B.A.P. 9th Cir. 2000).

The cases cited by Perry are off point and distinguishable.

The motion to strike Allsop's declaration is without merit. It is made with personal knowledge and also falls under the business records exception.

As to the Rewrite Agreement, Perry ratified it by making some payments in the lesser amount as set forth in that agreement. The Rewrite Agreement also keeps the terms of the contract in force, including the security interest in the car.


**The Surreply**

[*Note by the Court: Because Mr. Perry is not represented by counsel, the Court allowed this surreply over the objection of Chase*.]

Chase never sought adequate protection and thus waived the right to create a possessory lien. It is the responsibility of the possessor to seek a court order to keep the car – it is not the responsibility of the debtor to pursue the possessor. Chase only had a bogus electronic title – Perry had the paper title to the car.

Since the violation of the stay was willful, Perry is entitled to sanctions. Once

1   Chase had knowledge of the bankruptcy, it was deemed to also have knowledge of the

2   automatic stay. But Perry must prove by clear and convincing evidence that Chase

3   violated the stay.

4
5           Chase held onto the car because it did not really have a lien and if it had turned it

6   over, it would have lost that lien. Chase made the Bankruptcy Court assume that it had

7   a lien when it didn't. Chase should have asked the Court for adequate protection and

8   the reason that it didn't was because it didn't have a lien.  [*Note by the Court: Mr. Perry*

9   *then starts discussing the Trustee's right to sell property under §363, which is not*

10  *relevant to this situation.*]

11          The automatic stay prohibits the creditor from retaining possession of

12  repossessed property. And §542(a) applies to repossessed property as well as other

13
14  property in the hands of a creditor.

15

16                    **ANALYSIS AND HOLDINGS BY THE COURT**

17  **Standard for Granting Summary Judgment**

18
19          A motion for summary judgment is governed by Fed. R. Civ. P. 56 (incorporated

20  in Fed. R. Bankr. P. 7056). Summary judgment is proper when the pleadings, discovery,

21  and affidavits show that there is "no genuine dispute as to any material fact and that the

22  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Material facts

23  are those which may affect the outcome of the proceedings. *Anderson v. Liberty Lobby,*

24  *Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the

25  burden of identifying those portions of the pleadings, discovery, and affidavits that

26
27  demonstrate the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*,

28  477 U.S. 317, 323 (1986).

The moving party can carry its initial burden by showing that the opposing party lacks sufficient evidence on an essential element so that the movant would prevail at trial. Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has borne this, it is up to the opposing party to demonstrate that a genuine dispute exists as to a material fact. The facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 249; *Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991). However, mere allegations or denials do not defeat a moving party's allegations. *See Gasaway v. Northwestern Mut. Life Ins. Co*., 26 F.3d 957, 960 (9th Cir. 1994).

Also the opposing party may not raise grounds that are not in issue under the pleadings. *Wasco Prods, Inc. v. Southwall Techs, Inc.*, 435 F.3d 989, 991 (9th Cir. 2006).

**Did Chase have a perfected lien interest in the Vehicle?**

Perry has argued repeatedly that Chase does not have an enforceable lien in the Vehicle, and thus the Court's relief from stay was based on Chase's "bogus" title to the Vehicle. In particular, Perry argues that Chase sent him the paper certificate of title, and thereby lost its title to the Vehicle. Chase argues that the paper title certificate merely released *Chase Auto's* ownership interest in the Vehicle. (Perry has submitted a copy of this paper title to the Court, but has not shown that he holds the original. What appears to be the back of this paper certificate of title does not have Chase, as the new lienholder, noted.) Thus, Perry argues this Court should reconsider the merits of the relief from stay order. While Perry is correct that Chase would not have been entitled to relief from the automatic stay if it did not have a valid lien on the Vehicle [s*ee, e.g., In re Ducommun*, 159 B.R. 919 (Bankr. D. Idaho 1993)], his argument fails for a number of

1 reasons.

2  Perry never raised the argument in opposition to Chase's motion for relief from

3 stay. [BK dkt. 14, 19.] (He did cite the DMV Account View print out from February 13,

4 2009, but used it to argue that Chase had violated the stay by ordering paper title.) By

5 failing to raise this title argument at the time the relief from stay was litigated, Perry lost

6 his opportunity to do so.

7  Even if Perry had made this argument in opposition to Chase's relief from stay

8 motion, he would have lost. Chase undeniably had a lien on the Vehicle: Perry had

9 granted a lien on the Vehicle to Chase under the Contract. That lien was enforceable

10 against Perry irrespective of perfection.

11

12     An unperfected security interest is binding between the parties. The lack of
    perfection creates a problem only when an intervening third party obtains a
13     perfected security interest that trumps the unperfected interest.

14

15 *Simon v. Chrysler Credit Corp. (In re Babaeian Transp. Co.),* 206 B.R. 536, 540 (Bankr.

16 C.D. Cal. 1997).

17

18  The title certificate and "Electronic Title Request" affect *perfection* of Chase's lien

19 in the Vehicle. California law provides that a security interest in a vehicle is perfected by

20 deposit (either physically or electronically) of certificate of title endorsed to show the

21 secured party as legal owner of the vehicle. Cal. Veh. Code §6300, §6301.

22

23  It is not clear from the record before this Court whether Chase perfected its

24 security interest in the Vehicle. If a properly endorsed certificate of title showing Chase

25 as the legal owner was deposited with the DMV, then Chase's security interest was

26 perfected. Chase has not put a record of depositing such a certificate into evidence. The

27 DMV electronic record that has been submitted suggests that Chase deposited such an

28 endorsed certificate, but that record has not been authenticated and thus is not

evidence.[2]

However, the issue of perfection is ultimately irrelevant. Had it not been perfected prior to bankruptcy, then Chase's lien could have been avoided by the Trustee pursuant to §544(a). *Babaeian Transp.,* 206 B.R. at 540 ("the trustee enjoys the status of a lien creditor, and thus his interest has priority over an unperfected security interest"). But the Trustee did not seek avoidance of Chase's lien under §544(a). And this avoidance power is exercisable only by the Trustee, not by Perry. *See Houston v. Eiler (In re Cohen)*, 305 B.R. 886 (9th Cir. BAP 2004); *In re Britt*, 385 B.R. 800 at *7 (Table) (B.A.P. 9th Cir. 2007). In any event, the §546(a) limitations period for bringing an avoidance action expired two years after the petition date.

In sum, all that is necessary for this Court to conclude that Chase had a valid lien in the Vehicle is the Contract itself. That Contract granted Chase a security interest in the Vehicle enforceable against Perry. If Chase had failed to perfect that security interest, then the Trustee *could have* sought to avoid the lien, but the Trustee did not do so (and Perry cannot do so). In the absence of avoidance, any lack of perfection is irrelevant and the lien remained enforceable as to Perry.


**Reconsideration of Stay Relief**

Perry has repeatedly asked the Court to reconsider the merits of its order granting Chase relief from the automatic stay to sell the Vehicle. It is not clear how the Court could even reconsider a six-year-old order or what would be the effect, if any, of overturning a stay relief order years after the relevant collateral has been sold. In any

---

[2] In their papers, both Perry and Chase make arguments based on the assumption that Chase's repossession of the Vehicle might perfect its security interest in the Vehicle. However, Cal. Veh. Code §6300 *et. seq.* provides the exclusive means of perfecting a security interest in a Vehicle under California law.

event, it should be noted that overturning the Court's order granting Chase relief from

the automatic stay would not help Perry. Perry's failure to redeem the Vehicle 30 days

after the first §341(a) meeting (which was on March 16, 2009), resulted in the automatic

stay terminating with respect to the Vehicle on or about April 15, 2009 - pursuant to

§362(h) and §521(a)(2). Section 521(a)(2) provides that:

> if an individual debtor's schedule of assets and liabilities includes debts which are
> secured by property of the estate--
> **(A)** within thirty days after the date of the filing of a petition under chapter 7 of
> this title or on or before the date of the meeting of creditors, whichever is earlier,
> or within such additional time as the court, for cause, within such period fixes, file
> with the clerk a statement of his intention with respect to the retention or
> surrender of such property and, if applicable, specifying that such property is
> claimed as exempt, that the debtor intends to redeem such property, or that the
> debtor intends to reaffirm debts secured by such property; and
> **(B)** within 30 days after the first date set for the meeting of creditors under
> section 341(a), or within such additional time as the court, for cause, within such
> 30-day period fixes, perform his intention with respect to such property, as
> specified by subparagraph (A) of this paragraph;
>
> except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the
> debtor's or the trustee's rights with regard to such property under this title, except
> as provided in section 362(h);

11 U.S.C. § 521(a)(2).  Section 362(h) provides that the failure to either (i) file a timely

notice of intention or (ii) timely take the action specified in that notice of intention results

in the stay terminating with respect to such property.  Perry filed a timely notice of

intention to redeem the Vehicle – it was filed with his petition. But he failed to redeem

the Vehicle within 30 days after the first scheduled §341(a) meeting (on March 16,

2009): when Perry did not redeem the Vehicle by April 15, 2009, the automatic stay

terminated under §521(a)(2)(B) and §362(h). The Vehicle was sold on April 30, 2009,

so, whether Chase was relieved of the stay due to the granting of its motion for relief

from the stay or whether the stay terminated due to Perry's failure to timely redeem the

Vehicle, no stay existed at the time of sale. The issue that remains is whether Chase's

ongoing possession of the Vehicle after the petition was filed was a violation of the stay.

### Violation of §362(a)(3)

Section 362(a)(3) bars any "act ... to exercise control over the property of the estate," as a violation of the automatic stay. 11 U.S.C. § 362(a)(3).  The Ninth Circuit has held that knowing retention of estate property does violate §362(a)(3):

> The "exercise control" clause of § 362(a)(3) was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub. L. No. 98-353, 1984 U.S.C.C.A.N. (98 Stat.) Congress did not provide an explanation of that amendment. *In re Young*, 193 B.R. 620, 623 (Bankr.D.C.1996). The Ninth Circuit BAP has interpreted this amendment as broadening the scope of § 362(a)(3) to proscribe the mere knowing retention of estate property. *Abrams v. Southwest Leasing & Rental Inc. (In re Abrams),* 127 B.R. 239, 241-43 (9th Cir. BAP 1991) (failure to return repossessed car after receiving notice of Chapter 7 filing constituted a violation of the automatic stay). In *dicta*, this circuit has accepted that interpretation. *Chugach*, 23 F.3d at 246. We now adopt the reasoning of *Abrams* and *Chugach*, and hold that the knowing retention of estate property violates the automatic stay of § 362(a)(3).

*California Emp. Dev. Dept. v. Taxel (In re Del Mission Ltd*.), 98 F.3d 1147, 1151 (9th Cir. 1996). However, *direct* control over estate property is a prerequisite to a finding that §362(a)(3) has been violated. *Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Products, Inc.),* 23 F.3d 241, 244 (9th Cir. 1994).

In the case of *Farnsworth v. Castro (In re Castro),* 2009 WL 7809012 (B.A.P. 9th Cir. 2009), the creditor repossessed two cars owned by the debtors. The day before the cars were to be auctioned, the debtors filed a voluntary chapter 7 petition. The creditor was made aware of the bankruptcy on the date of the petition filing. Thereafter, less than one week after the petition filing, debtors' counsel demanded return of the vehicles and debtors filed their Schedules B and C.  Creditor failed to return the vehicles to the debtors and debtors then filed an adversary proceeding against the creditor. The bankruptcy court ultimately ruled that creditor's failure to return the vehicles to the

debtors within a reasonable time after the petition date constituted a willful violation of

the stay. Creditor appealed the bankruptcy court's decision.  On appeal, the 9th Circuit

Bankruptcy Appellate Panel stated:

> The fundamental underlying issue addressed in *Del Mission Ltd.* was
> whether the creditor exercised control over property of the estate by retaining
> possession of estate property.  In *Del Mission Ltd.,* the Ninth Circuit clarified that
> to effectuate the purpose of the automatic stay, the "onus to return estate
> property is placed upon the possessor; it does not fall on the debtor to pursue the
> possessor." Thus, if Mr. Farnsworth wanted to retain possession of the vehicles
> after receiving notice of the Castros' bankruptcy filing, the burden was on him to
> file a motion for relief from the stay.

*Castro, 2009* WL 7809012, at *4.

While it is clear in *Castro* that the creditor had a duty to turn over the cars to the

debtors, it is worthy to note that the Bankruptcy Appellate Panel included a "reasonable"

element to the analysis, *i.e.,* that the creditor must return the property to the debtor

within a reasonable time after notice of the bankruptcy filing. *Id.* at *5-6.

What constitutes a reasonable period of time for turnover of estate property?

There is no bright line rule which defines a reasonable period of time.  Based upon a

review of case law, it appears a reasonable length of time depends upon the facts of the

case.  *Gouveia v. IRS (In re Quality Health Care),* 215 B.R. 543, 555 (Bankr. N.D. Ind.

1997)(The "reasonable period of time" is unique to each case and must be determined

on a case-by-case basis.)

In *Castro,* the bankruptcy court established the date for a reasonable time to

return the vehicles as the date the Castros claimed an exemption in the vehicles.[3] 2009

WL 7809012, at *6. In *In re Belcher,* 189 B.R. 16 (Bankr. S.D. Fla. 1995), the creditors

retained possession of the vehicle for nine days after initial demand.  The court found

---

[3] *Castro* was decided before the Ninth Circuit's decision in *Mwangi.* As discussed below, after *Mwangi,*
the court would have had to conclude that the debtors lacked standing to assert a violation of the stay and
thus would never have gotten to the question of what is a reasonable time.

that nine days exceeded a reasonable period of time and believed that four or five days

was acceptable. Finally, in *Brooks v. World Omni (In re Brooks),* 207 B.R. 738, 741

(Bankr. N.D. Fla. 1997), the court found that five days exceeded a reasonable period of

time and believed that three days was sufficient as the creditor had consulted with its

attorney and knew the statutory requirements approximately three days after notice of

the bankruptcy.

    Here, it is undisputed that Key repossessed the car on February 6, 2009. On

February 11, 2009, Perry filed his chapter 7 bankruptcy case. Chase was listed on the

creditor matrix and was given notice of the bankruptcy through the Bankruptcy Noticing

Center. Perry also sent a notice of bankruptcy directly to Chase on February 12, 2009.

No later than February 13, 2009, Chase became aware of the bankruptcy. But Chase

failed to return the car. Chase waited until March 10, 2009, close to thirty days from

receipt of the notice of the bankruptcy filing, before it filed a motion for relief from the

automatic stay.

    The Court finds that it is at least probable that Chase violated the automatic stay

under §362(a)(3). Chase had notice of the Perry bankruptcy no more than 48 hours

after the petition filing; Chase had possession of the vehicle; and Chase never returned

the car. Instead of promptly filing a motion for relief from the automatic stay upon notice

of the bankruptcy filing, Chase dragged its feet - all the while still retaining full custody of

the car. Moreover, Chase did not file its motion for relief from the automatic stay until

close to thirty days after it received notice of the bankruptcy. As such, Chase's

continued retention of the car for this length of time without filing a motion for relief from

stay would be a violation of §362(a)(3) unless Chase can show that it was reasonable

under the circumstances.

The record before the Court only demonstrates that Chase may have had communication delays between its various departments in seeking proof of title and copies of documents. There is no indication that Chase believed that Perry would be a flight risk once he obtained the car or that he would conceal it.  There were only two payments in arrears. This was not a new car, had low value, and a relatively small amount was owed. Perry was a long-term customer as he had been in dealing with Chase for at least five years and apparently more. There is no indication that Chase was following advice of counsel as to delaying the turnover of the car.

There were no discussions with the Debtor of possible adequate protection. Once the motion was prepared, there was no request for a hearing on shortened notice. The motion calendar held on April 9 was the first one at which the motion for relief from stay could be set on regular motion, but there were several calendar dates available in the interim for hearing on shortened notice and Chase did not seek to shorten notice.

**Standing**

Perry's Interest in the Vehicle Was Exempt

Section 522(l) provides the mechanism for claiming an exemption:

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

11 U.S.C. § 522(l). The Bankruptcy Rules further provide that:  "A debtor shall list the property claimed as exempt under §522 of the Code on the schedule of assets required to be filed by Rule 1007." Fed. R. Bankr. P. 4003(a). Perry failed to list the Vehicle on Schedule C. Thus, he never formally claimed an exemption in the Vehicle.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

However, Perry did file a statement of intent (Official Bankruptcy Form 8) indicating his intent to redeem the Vehicle and stating the Vehicle "is claimed as exempt." This statement of Intent was filed with Perry's chapter 7 petition, schedules, and statement of financial affairs.

A claim of exemption must enable trustees and creditors "to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules." *Seror v. Kahan (In re Kahan),* 28 F.3d 79, 82 (9th Cir.1994); *Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316, 1319 n. 6 (9th Cir.1992); *Moldo v. Clark* (*In re Clark*), 266 B.R. 163, 168 (B.A.P. 9th Cir. 2001); *see also Schwab v. Reilly*, 560 U.S. 770, 791 (2010) (limiting exemptions to "those plainly expressed"); *Barroso-Herrans v. Lugo-Mender (In re Barroso-Herrans)*, 524 F.3d 341, 344 (1st Cir. 2008)("To start, we ask how a reasonable trustee would have understood the filings under the circumstances.")

Although ambiguities must be resolved against the Debtor, in this case it would have been clear to any reasonable trustee or creditor reading the petition package that Perry was claiming an exemption of his interest in the Vehicle. While Perry – a *pro* se debtor - failed to list the Vehicle on Schedule C, the attached Statement of Intention plainly stated that the Vehicle was being claimed as exempt. Furthermore, neither §522 nor Rule 4003 require that a claim of exemption be made on Schedule C, merely that the Debtor file a list of assets claimed as exempt. (Rule 4003 further specifies that the list be in the schedules.) Finally, exemption laws "are to be construed liberally in favor of exemption." *Lampe v. Williamson* (*In re Lampe*), 331 F.3d 750, 754 (10th Cir. 2003). Thus, this Court concludes that Perry did claim an exemption in the Vehicle.  The Trustee did not object to the exemption, which accordingly was perfected 30 days after

1  the petition package was filed – on or about March 13, 2009.[4]

2

3  Perry has no standing under §542(a)

4       However, Perry, as a chapter 7 debtor, lacks standing to bring an action under

5

6  §542(a). Section 542(a) provides that:

7       Except as provided in subsection (c) or (d) of this section, an entity, other than a
       custodian, in possession, custody, or control, during the case, of property that the
8       trustee may use, sell, or lease under section 363 of this title, or that the debtor
       may exempt under section 522 of this title, shall deliver to the trustee, and
9       account for, such property or the value of such property, unless such property is
       of inconsequential value or benefit to the estate.
10

11  11 U.S.C. §542(a). The references to property the debtor "may exempt" or "of

12  inconsequential value . . . to the estate," are puzzling in the context of this case, where it

13  is the chapter 7 debtor who is seeking turnover from a creditor. They do make sense in

14  the context where §542(a) is more typically used in chapter 7 – a chapter 7 trustee

15  seeking turnover of non-exempt property from the debtor. *See, e.g., In re Burgio*, 441

16

17  B.R. 218, 220 (Bankr. W.D.N.Y. 2010).

18       Accordingly, some courts have held that a chapter 7 debtor cannot seek turnover

19  under §542(a). *See, e.g., Titan Real Estate Ventures v. MJCC Realty Ltd. P'ship (In re*

20  *Flanagan)*, 415 B.R. 29, 36 (D. Conn. 2009); *Caffey v. Jag Autocare (In re Caffey)*, 2014

21  WL 3888318, at *4 (Bankr. N.D. Ohio Aug. 8, 2014). Other courts have allowed chapter

22  7 debtors to compel turnover from creditors under §542(a). *See, e.g., In re Velichko*,

23

24  473 B.R. 64, 68 (Bankr. S.D.N.Y. 2012).

25       The Ninth Circuit Bankruptcy Appellate Panel recently held that chapter 7 debtors

26

27  _____
[4] Although "[a] debtor may not claim an exemption in property that is wholly encumbered by a consensual
   lien" [*Labostrie v. L.A. Fin. Credit Union (In re Labostrie)*, 2012 WL 6554727, at *4 (B.A.P. 9th Cir. Dec.
28  14, 2012), *citing Owen v. Owen*, 500 U.S. 305, 308 (1991)], Perry did have a small amount of equity in
   the Vehicle. Chase's payment history shows about $8,100 owing on the Vehicle.  [Exhibit 4 to Allsop
   Dec., dkt. 292-1.] In his schedules, Perry claims the value of the Vehicle was $8,900-9,000.  [BK dkt. 1.]

lack standing under §542(a). *Collect Access v. Hernandez* (*In re Hernandez)*, 483 B.R.

713, 725 (B.A.P. 9th Cir. 2012). However, the B.A.P. nonetheless did allow the chapter

7 debtors to recover damages against creditors refusing to turnover property to the

debtor – as a violation of §362(a)(3), which bars any  "act ... to exercise control over the

property of the estate." *Hernandez*, 483 B.R. at 726; *see also Castro*, 2009 WL

7809012, at *4-5.

Perry lacks standing under §362(a)(3)

       Thus, until last year, the Court would have concluded that Perry had standing to

bring an action against Chase for violation of §362(a)(3). However, the Ninth Circuit

recently concluded that §362(a)(3) does not protect property of the *debtor* (as opposed

to property of the estate):

> In this case, we must decide whether the Debtors can state a claim for a willful
> violation of 11 U.S.C. § 362(a)(3)—which proscribes "any act to obtain
> possession of property of the estate or of property from the estate or to exercise
> control over property of the estate"—based on the operation of Wells Fargo's
> administrative pledge. We hold that they cannot state such a claim. Before the
> account funds revested in the Debtors, they remained estate property, and the
> Debtors had no right to possess or control them. Accordingly, the operation of the
> administrative pledge could cause the Debtors no injury before the account funds
> revested. After the account funds revested in the Debtors, they lost their status
> as estate property and thus were no longer subject to § 362(a)(3).

*Mwangi v. Wells Fargo Bank (In re Mwangi)*, 764 F.3d 1168, 1170-71 (9th Cir. 2014).

      *Mwangi* truly leaves the chapter 7 debtor's interests in assets unprotected by

§362(a)(3). If a creditor fails to turn over the debtor's property, the debtor cannot bring

actions under §362(a)(3) prior to the debtor's exemption in the assets being perfected,

because such actions may only be brought by the trustee. After the exemption revests

the property in the debtor, the debtor cannot bring a §362(a)(3) action because the

asset is then no longer property of the estate.

The facts and the analysis in this case are slightly different than *Mwangi*, although Perry still lacks standing under §362(a)(3). *Mwangi* distinguished between the deposit accounts in that case, which were themselves exempt, and property such as the Vehicle, in which the debtor's "interest" in the asset was exempt under the state exemption law. In the former case, the asset revests in the debtor as soon as the 30-day period for objecting to exemptions has passed without objection; in the latter case (under *Schwab v. Reilly*, 560 U.S. 770 (2010), and *Gebhart v. Gaughan (In re Gebhart),* 621 F.3d 1206 (9th Cir. 2010)) the asset remains estate property until it is administered or abandoned, or the case is closed.

Thus, in this case, because the Vehicle remained in the estate and only an interest revested in Perry, the Vehicle remained protected by §362(a)(3) even after Perry's exemption vested. However, with only an interest in the Vehicle exempted, Perry continued to lack the right to possess or control the Vehicle. *See, e.g., Zavala v. Wells Fargo Bank (In re Zavala)*, 444 B.R. 181, 189 (Bankr. E.D. Cal. 2011); *see also Schwab v. Reilly*, 560 U.S. 770, 792 (2010)("title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption"). It is the right to possess or control that gives the right to assert damages under §362(a)(3). *Mwangi*, 764 F.3d at 1177. So Perry never obtained the right to assert damages for a violation of §362(a)(3).

Applying *Mwangi* to these facts appears inequitable, to this Court at least. *Mwangi* involved the right to money, which will almost always be administered by the chapter 7 trustee and which is subject to an extreme risk of dissipation in the debtor's hands. On the other hand, a debtor may use a "hard" asset like a car without inevitably destroying value and such use may be integral to the debtor's continued employment.

1  Unlike money, a car typically remains in the chapter 7 debtor's possession and is almost

2  never administered by the trustee:

3
       In the typical consumer chapter 7 case, few, if any, objections are filed to claimed
4      exemptions, and it is virtually unheard of for trustees to object to debtors'
       statutory exemption claims in automobiles. As the bankruptcy court noted, "I've
5      been doing this for over 20 years, and I can count on one hand the number of
       times a trustee in bankruptcy has administered a vehicle." Transcript of the Trial
6      of the Adversary Proceeding, at 227.

7
8  *Castro*, 2009 WL 7809012, at *8.  Thus, requiring a chapter 7 debtor to have a

9  perfected exemption in a vehicle in order to assert a right to damages is inconsistent

10 with both existing practice and the rationale of *Mwangi*. This requirement will simply

11 enable creditors to delay return of vehicles – vehicles which are typically essential to the

12 debtor – without any benefit to the estate.

13     Holding that the Debtor's exempt property – once revested in the Debtor - is not

14 protected by §362(a)(3) simply gives creditors free rein to take and seize the debtor's

15
16 property, which is deeply inconsistent with bankruptcy policy and practice. *Mwangi*

17 states that debtors could sue for breach of contract to recover exempt property seized

18 by a creditor. This, of course, places the burden of action on the debtor and will cause

19 substantial delay in return of the assets, certainly impairing the debtor's fresh start.[5]

20     Nonetheless, this Court is bound by *Mwangi* and thus must hold that Perry lacks

21
22 standing to bring an action under §362(a)(3) against Chase for retaining the Vehicle.

23 The Court is frustrated by this conclusion, because Chase probably violated §362(a)(3),

24 and did so to an individual who had been paying on this Vehicle for approximately eight

25 years, was a long-standing customer of Chase, was only two payments behind, and had

26

27 _____
[5] In fact, Perry did bring an action in state court [Los Angeles County Superior Court, case # PC044679]
28 seeking damages for wrongful repossession of the Vehicle under six causes of action, including breach of
   contract. This state court action was ultimately dismissed for Perry's failure to post a bond after being
   deemed a vexatious litigant. The details of this state court action are discussed in this Court's
   Memorandum of Opinion on Central Issues [Dkt. 122] at 2:15-4:8.

been subjected to previous accounting errors by Chase.

As noted above, Chase's delays would have created a triable issue of fact.  The Court has considered encouraging Perry to appeal this ruling on the (somewhat slim) possibility that the Ninth Circuit might limit *Mwangi* and not apply it to this context. (Due to Perry's numerous prior appeals, which were all either dismissed or ended in a ruling against Perry, this Court has suggested to the appellate courts that Perry be declared a vexatious litigant. However, this appeal would differ as it falls under urging a change in the law.) The Court is reluctant to do so, because even if Perry were able to recover for a violation of §362(a)(3), the actual damages awarded for such a violation are generally quite low. *See, e.g., TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999)(attorney's fees of $2,122.50); *Stephens v. Guaranteed Auto (In re Stephens)*, 495 B.R. 608, 615 (Bankr. N.D. Ga. 2013)(actual damages of $1,559 and attorney's fees of $4,325); *Mitchell v. BankIllinois*, 316 B.R. 891, 904 (S.D. Tex. 2004) ($8,520.97 in actual damages, including attorney's fees, plus appellate attorney fees and costs); *Will v. Ford Motor Credit Corp. (In re Will)*, 303 B.R. 357, 369 (Bankr. N.D. Ill. 2003)($524 in compensatory damages for cabs, buses and lost personal property in car, plus costs and attorney's fees); *In re Cepero*, 226 B.R. 595, 601 (Bankr. S.D. Ohio 1998)(actual damages of $1,832.40); *In re Zaber*, 223 B.R. 102 (Bankr. N.D. Tex. 2003)($180 in car rental and $1,400 of reasonable attorney's fees).[6]

Punitive damages, typically relatively modest in amount, have been awarded, but only for egregious violations. *Stephens*, 495 B.R. 608 ($17,890 in punitive damages where creditor sold car without seeking relief from the stay); *Will*, 303 B.R. 357 ($2,000 in punitive damages); *Cepero*, 226 B.R. at 601 ($12,000 in punitives for egregious

---

[6] Perry would have no claim to attorney's fees as he has represented himself throughout these proceedings.

violation – post-petition sale of vehicle despite numerous notices of bankruptcy).

Finally, in *Castro* the Ninth Circuit B.A.P. held that a chapter 7 debtor is not entitled to stay violation damages arising during the period prior to the exemption being perfected and the right to possess the asset revesting in the chapter 7 debtor. 2009 WL 7809012, at *9. Thus, Perry would not be entitled to any damages relating to at least the first 30 days of this case. For these reasons, even a successful appeal may not yield a monetarily meaningful recovery.

## **CONCLUSION**

As set forth above, Perry lacks the standing to bring an action for damages for Chase's (probable) violation of §362(a)(3) and §542(a).  Summary judgment will be granted in full to Chase.

###

Date: November 13, 2015

_____
Geraldine Mund
United States Bankruptcy Judge

PERRY V. CHASE CHRONOLOGY

| DATE | DESCRIPTION | JUDICIAL NOTICE | PERRY DOCUMENTS | CHASE DOCUMENTS | COURT NOTES/COMMENTS | PERRY COMMENTS | CHASE COMMENTS |
|---|---|---|---|---|---|---|---|
| | | # refers to bankruptcy case unless otherwise noted | # refers to this adversary case unless otherwise noted | | | | |
| 1/10/2002 | Letter from Chase that check of $457.99 received and applied on 11/26/01 | | #305, exhibits p. 34 | | | | |
| 12/2/2002 | Letter from Marcus Bastida to Chase demanding acknowledgment that Perry has been timely on all payments | | #305, exhibits p. 25 | | | | |
| 1/10/2003 | Letter from Chase agreeing that there was an error in applying the payment received on 7/26/01 and that is being corrected | | #305, exhibits p. 27, 33 | | | | |
| 1/30/2003 | Letter from Marcus Bastida to Chase demanding acknowledgment that Perry has been timely on all payments | | #305, exhibits p. 26 | | same letter as that of 12/2/02, but to a different address | | |
| 7/15/2004 | Letter from Chase that they have notified the credit reporting agencies that the account was paid in full with a zero balance and not deficiencies. They waived all late fees. | | #305, exhibits p. 28 | | acct. 4 3200 35175 | | the account # refers to the prior lease and not the note that was the subject of the RFS order |
| 8/7/2004 | Promissory Note and Security Agreement | | #305, exhibits p. 15 | #292, ex. 1 | | | |
| 8/18/2004 | Pink slip transferring title to Perry | | #305, ex. 1 | | shows Chase as registered owner | does not show Chase lien | this dealt with the lease and not the new agreement in which Perry financed his purchase and became the registered owner and Chase the lienholder. |
| 8/19/2004 | Chase application to DMV for release of interest in vehicle | | #305, ex. 1 | | says certificate of title was lost. Dated 8/19/04, but not notarized on 2/22/05 | | |
| 8/19/2004 | DMV vehicle transfer and reassignment form showing sold to Perry | | #305, ex. 1 | | Form instructions attached | | |
| 2/9/2005 | Letter from Chase sending copy of note, security agreement, purchase transfer agreement and odometer statement that Perry signed to pay off lease. $250 in late fees waived. Looking for where 6/5/04 | | #305, exhibits p. 32 | | acct. 4 3200 35175. Perry took new loan to pay off lease and keep car | | |
| 12/12/2006 | Chase Simple Interest Extension Agreement | | #305, exhibits p. 24 | | | | |
| 4/1/2007 | Chase Master Services Agreement with Countrywide Asset and Auto Recovery, L.P | | #305, exhibits p. 96 | | | | |
| 4/6/2007 | Letter from Chase that $100 late fee removed from his account | | #305, exhibits p. 30 | | acct. 104 231 11 0034 57 | | |
| 12/10/2007 | Chase Simple Interest Extension Agreement | | 15-01129, ex. 59 | | | | |
| 2/4/2008 | Key Certificate of Liability Insurance | | #305, exhibits p. 120 | | | | |
| 5/16/2008 | Account Rewrite Agreement | | #305, exhibits p. 21 | #292, ex. 3 | sent by Chase and notes that Perry orally agreed to it. Sets a revised payment schedule of $381.52 for 5/10/08 and $252.08 startnig on 6/10/08 | | |
| 12/1/2008 | Bank of America transaction detail - check to Chase for $252.08 | | #305 exhibits p. 19 | | | | |
| 12/10/2008 | Letter from Perry to Chase that Lathrup is his attorney , only some late fees have been removed, and two payments are in dispute | | #305, exhibits p. 35 | | "I have been paying the car for nine years. I think I owe $6500 on the car. I intend to pay the rest, maybe in bigger chunks in a few months and finish this mistreatment by your collection department." Also lady in collection department told him they would not take his car and she would call back in an hour, but she never called back. | | |
| 12/15/2008 | Letter from Perry to Chase detailing problems | | #305, exhibits p. 37 | | content is virtually identical to letter of 12/20/08 | | |

| DATE | DESCRIPTION | JUDICIAL NOTICE | PERRY DOCUMENTS | CHASE DOCUMENTS | COURT NOTES/COMMENTS | PERRY COMMENTS | CHASE COMMENTS |
|---|---|---|---|---|---|---|---|
| 1/9/2009 | Bank of America transaction detail - check to Chase for $252.08 | | #305 exhibits p. 20 | | | | |
| 1/30/2009 | Key Order to Repossess on behalf of Chase Auto Finance | | #305, exhibits p. 94 | | shows balance on acct of $8819.37, past due of $756.24, monthly payments of $252/08 and delinquent since Nov. 10, 08 | | |
| 2/2/2009 | Perry to Attorney Mary Ann Foran that Chase has not sent rewrite contract agreed to 7 months ago and may not have been crediting the three payments that he made. | | #305, exhibits p. 29 | | | | |
| 2/5/2009 | Letter from J. Martin Lathrop to Chase re: notice of dispute as to what is owing | | #305, exhibits p. 22 | | | | letter is dated 2/5/09, but the fax dateline is 2/18/09 |
| 2/5/2009 | *Key repossesses the car (in the late evening or early in the morning of 2/6/09)* | | #305, exhibits p. 39 | | | | |
| 2/11/2009 | Perry files bankruptcy. Chase listed on creditor matrix at 900 Stewart Ave. FL 3, Garden City, NY 11530 & P.O. Box 981439, El Paso, TX 79998 | bk #1 | | | | | |
| 2/11/2009 | Notice of Intent to Dispose of Repossessed Vehicle | | 15-01129, ex. 29 | | Perry wrote that he was not served with this.  Shows amount to reinstate of $2,034.12; remaining contract balance of $8,251.06, total redemption of $9,276.86. May have been in the same mailing as the Noitce of Our Plan to Sell Property (item 29) | | |
| 2/11/2009 | Perry files his schedules, noting the 2001 Nissan Pathfinder, claiming its value as $9,000, and showing a disputed secured claim in that amount. No exemptions claimed. | bk #1 | | | | | |
| | event #27 deleted | | | | | | |
| | event #28 deleted | | | | | | |
| 2/11/2009 | Chase gives Perry notice of it plan to sell the car at private sale sometime after 3/5/09 | | 15-01129, ex. 29 | | May have been in the same mailing as the Notice of Intent to Dispose of Repossessed Vehicle (item 25) | Perry assert that he did not receive this prior to the state court action | |
| 2/12/2009 | Letter or fax to Key Auto Recovery from Perry detailing the repossession and threatening criminal penalties | | #305, exhibits p. 39 | | | | |
| 2/12/2009 | Perry sends notice of bankruptcy to Chase | | 15-01129, ex. 28-2 | | | | |
| 2/12/2009 | Court electronically serves notice of bankruptcy on Chase at PO Box 981439, El Paso. TX 79998-1439 | bk #7 | 15-01129, ex. 28-3 | | The notice dated 2/11/09 and on the bankruptcy case docket as #7 was mailed by BNC on 2/12/09 | | |
| 2/13/2009 | Electronic Title Notice | | #305, ex. 2 | #292, ex. 2 | Electronic Lien and Title Program description attached to Perry ex. 2 | | |
| 2/13/2009 | Chase places bankruptcy hold on the account | | 15-01129, ex. 39 | | | | |
| 2/17/2009 | Perry files a complaint against Chase in LA Superior Court | | | | | | |
| 2/23/2009 | Chase writes in its written notes that Perry filed bankruptcy | | #305, p. 91 | | | | |
| 2/24/2009 | Chase searching for title to car | | 15-01129, ex. 43 | | | | |
| 2/25/2009 | Perry filed opposition to Chase motion to lift stay and seeks a preliminary injunction | bk #14 | | | no motion for RFS has been filed | | |
| 2/25/2009 | Chase looking for copies of contract, etc. | | 15-01129, ex. 44-45 | | Chase notes that Perry is in chapter 7 | Chase notes that it is unable to locate a copy of the title | |
| 3/9/2009 | Perry files motion for OSC against Key and Chase for contempt for violating the stay | bk #17 | | | | | |
| 3/10/2009 | Chase motion for RFS | bk #15 | | | | | |
| 3/20/2009 | payment history | | | #292, ex. 4 | | | |
| 3/23/2009 | Chase files opposition to motion for OSC | bk #18 | | | filed again on 3/30, #23 | | |
| 3/23/2009 | Perry filed "additional opposition" to Chase motion for relief from stay | bk #19 | | | | | |
| 3/30/2009 | Reply to Debtor's Opposition to Motion for Relief from Automatic Stay | bk #22 | | | Perry points out that it says that CA is a paperless title state and so Chase did not need a paper title until 2/10/09 | | |

PERRY V. CHASE CHRONOLOGY                                                                                        3

| DATE | DESCRIPTION | JUDICIAL NOTICE | PERRY DOCUMENTS | CHASE DOCUMENTS | COURT NOTES/COMMENTS | PERRY COMMENTS | CHASE COMMENTS |
|---|---|---|---|---|---|---|---|
| 4/1/2009 | Perry files reply to Court's 3/24/09 tentative ruling and additional opposition to Chase's opposition to the motion for OSC | bk #24 | | | | | |
| 4/9/2009 | hearing on Perry's motion for OSC and injunction | | | | | | |
| 4/9/2009 | hearing on Chase motion for RFS | | | | | | |
| 4/14/2009 | Perry filed motion to reconsider on his motion for OSC | bk #25 | | | | | |
| 4/14/2009 | Perry files appeal of the Order granting relief from stay | bk #26 | | | | | |
| 4/21/2009 | Court denies motion to reconsider declining OSC | bk #28 | | | Order abstaining from OSC as to sanctions not on the docket | | |
| 4/23/2009 | Order granting RFS | bk #29 | | | | | |
| 4/29/2009 | Perry files objection to Chase proposed order for RFS | bk #41 | | | | | |
| 4/30/2009 | Chase sells the car | | | #292, dec. of Jeff Allsop | | | |
| 5/1/2009 | Court denies Perry motion for stay pending appeal | bk #36 | | | | | |
| 5/9/2009 | Chase View Activity from 4/17/08-3/20/09 | | #305, exhibits p. 80 | | | | |
| 2/5/2010 | Perry files adversary proceeding | 10-01043 | | | | | |
| 3/13/2012 | 9th Circuit affirms abstention as to sanctions, etc. | 09-60052 | | | | | |
| 3/13/2012 | 9th Circuit affirms appeal from RFS order is moot | 09-60052 | | | | | |